**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **CRIMINAL NO. _____** |
| ) | |
| ) | **VIOLATIONS:** |
| ) | |
| v.    ) | **18 U.S.C. § 371** |
| ) | **(Conspiracy)** |
| ) | |
| **CHINA NUCLEAR INDUSTRY HUAXING** ) | **50 U.S.C. § 1705** |
| **CONSTRUCTION CO., LTD.** ) | |
| ) | **(International Emergency** |
| **No. 79 Yunlongshan Road** ) | **Economic Powers Act)** |
| **Jianyie District** ) | |
| **Nanjing City, Jiangsu Province** ) | **15 C.F.R. Parts 730–774** |
| **People's Republic of China** ) | **(Export Administration** |
| ) | **Regulations)** |
| **Defendant.** ) | |
| ) | **18 U.S.C. § 2** |
| ) | **(Causing an Act to Be Done)** |
| ) | |

**INFORMATION**

The United States Attorney for the District of Columbia charges that:

**COUNT ONE**

At all times material to this Information:

**Introduction**

1.  The **CHINA NUCLEAR INDUSTRY HUAXING CONSTRUCTION CO., LTD. ("HUAXING")**, was a Chinese construction company specializing in nuclear engineering, nuclear power engineering and military engineering.   Its principal place of business and headquarters was in Nanjing City, People's Republic of China ("PRC").   **HUAXING** was a contractor responsible for applying coatings during the construction of the Chashma Nuclear Power Plant No. II ("Chashma II") in Pakistan.

2. PPG Paints Trading (Shanghai) Co., Ltd. ("PPG Paints Trading"), a wholly-owned subsidiary of PPG Industries, Inc. ("PPG Industries"), was a Chinese corporation with its principal place of business in Shanghai, China. PPG Paints Trading was engaged in the business of importing and exporting architectural, refinish, industrial and packaging coatings on behalf of various PPG Industries' business units.

3. PPG Industries was a publicly-held United States corporation with its principal place of business in Pittsburgh, Pennsylvania. PPG Industries was a major global manufacturer and supplier of chemicals, glass, fiberglass, and architectural, industrial and performance coatings.

4. Xun Wang was a Chinese national and lawful permanent resident of the United States. From in or around May 2006 until in or around September 2007, Xun Wang held the position of Managing Director of Architectural Coatings at PPG Paints Trading.

5. Company A was a Chinese distributor of coatings located in Shanghai, PRC.

**Relevant Legal Authorities**

6. The United States Department of Commerce ("DoC"), located in the District of Columbia, had the authority to prohibit or curtail the export of goods and technologies from the United States to foreign countries and entities, as necessary, to protect, among other things, the national security and foreign policy of the United States. The DoC implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, which restricted the export of certain goods and technologies unless authorized by the DoC through issuance of a valid export license.

7.      Under provisions of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, the President of the United States had the power to regulate exports and other international transactions in times of national emergency, as triggered by national security, foreign policy or economic concerns stemming from the unrestricted access by foreign parties to United States goods and technologies.   By virtue of Executive Order 13222 and annual notices issued by the President pursuant to his authority under IEEPA, the EAR continued in full force and effect at all times relevant to the Information.

8.      The DoC's Bureau of Industry and Security ("BIS") published a list of restricted entities (the "Entity List") found in Supplement No. 4 to Part 744 of the EAR.   Entities were placed on the Entity List because they engaged in activities that could result in an increased risk of diversion of exported items to weapons of mass destruction programs, to nuclear proliferation activities, to activities sanctioned by the Department of State, and to activities contrary to our national security and foreign policy interests.   Entities on the Entity List were ineligible to receive U.S. exported goods subject to the EAR without issuance of a valid DoC export license to the extent specified in Supplement No. 4 to Part 744.11(b) of the EAR.

**Export and Shipping Records**

9.      Pursuant to United States law and regulation, exporters and shippers or freight forwarders are required to file certain forms and declarations concerning exports of goods and technology from the United States.   Typically, those filings are completed through the submission of a paper Shipper's Export Declaration ("SED") or the submission of Electronic Export Information ("EEI") via the Automated Export System.   The SEDs and EEIs are official documents submitted to the United States Government in connection with exports from the

United States. An SED or EEI must be filed for every export subject to the EAR that requires submission of a license application, regardless of the value of the export or destination.

10. The SED or EEI is equivalent to a statement to the United States government that the transaction occurred as described. The SED and EEI are used by BIS, which is located in the District of Columbia, for export control purposes. Essential and material parts of the SED or EEI include information concerning the ultimate consignee for the export, the country of ultimate destination for the export, and the license authority. In many cases, the ultimate consignee, country of ultimate destination, or license authority for an export determines whether the goods may be exported (a) without any specific authorization from the United States government; (b) with a specific authorization or a license from the DoC; or (c) whether the goods may not be exported from the United States at all.

**The Pakistan Atomic Energy Commission and the Chashma II Nuclear Power Plant**

11. The Pakistan Atomic Energy Commission ("PAEC") is the science and technology organization in Pakistan responsible for, among other things, Pakistan's nuclear program, including the development and operation of nuclear power plants in Pakistan.

12. In November 1998, following Pakistan's first successful detonation of a series of nuclear devices, BIS added the PAEC, as well as its subordinate nuclear reactors and power plants, to the list of prohibited end-users under the Export Administration Regulations (EAR). The PAEC and its subordinate nuclear reactors and power plants have remained on the Entity List since November 1998. As such, the export, reexport, and transshipment of any items subject to the EAR for use by the PAEC or in its nuclear reactors and power plants, including the

4

Level 1 Nuclear Coatings, was unlawful absent a license from the DoC in the District of Columbia.

13. In 2006, Chashma II was a PAEC nuclear power plant under construction in Pakistan. Because it was a PAEC nuclear power plant, export and reexport of any items subject to the EAR for use at Chashma II, including the Level 1 Nuclear Coatings, required a license from the DoC.

14. Section 734.2(b)(1) of the EAR defined "export" to mean, in pertinent part, "an actual shipment or transmission of items subject to the EAR out of the United States." Section 734.2(b)(4) of the EAR defined "reexport" to mean, in pertinent part, the "actual shipment or transmission of items subject to the EAR from one foreign country to another foreign country."

### PPG Industries' Level 1 Nuclear Coatings

15. At one of its factories in Watertown, Connecticut, PPG Industries manufactured high-performance epoxy coatings that were tested and certified for use inside the Level 1 containment area of a nuclear reactor. The Level 1 containment area is the area immediately surrounding a nuclear reactor's core. In the United States, ASTM International ("ASTM") develops and publishes standards for such Level 1 Nuclear Coatings. The Level 1 Nuclear Coatings were tested and certified as passing the "American Standard," i.e., testing standards established by the American National Standards Institute (ANSI) and the American Society for Testing and Materials (ASTM) that ensure that the Level 1 Nuclear Coatings could withstand the harsh environment encountered inside the containment area of a reactor, especially during a loss of coolant accident. The paint system included a two-part epoxy base coat (product codes

5

KL65487107A and KL65487107B), an epoxy top coat (product code KLD19140 and KLD1B), and a thinner, or solvent (product code KL4093) (together, "the Level 1 Nuclear Coatings").

16.     The Level 1 Nuclear Coatings were designated EAR 99 by the DoC, meaning they were items subject to the EAR, and thus subject to DoC's export control authority.

### The Chashma II Contract for PPG Industries' Level 1 Nuclear Coatings

17.     In or around December 2005, PPG Paints Trading entered a contract with defendant **HUAXING** for the supply of PPG Level 1 Nuclear Coatings for application by defendant **HUAXING** inside the containment area of the reactor at Chashma II (the "Chashma II Contract").   The design specifications for the Chashma II reactor required Level 1 Nuclear Coatings that had passed the American Standard, i.e., that had passed ANSI and ASTM tests for Level 1 Nuclear Coatings.

### Defendant Is Informed of the Export License Denial

18.     Because Chashma II was a PAEC nuclear facility, on or about January 20, 2006, PPG Industries, on the advice of counsel, submitted a license application to the DoC in the District of Columbia for authorization to export the Level 1 Nuclear Coatings for application at the PAEC nuclear power plant (the "Export License Application") called for under the Chashma II Contract.   On or about April 10, 2006, the DoC notified PPG of its intent to deny the Export License Application because the "proposed export poses an unacceptable risk of diversion to activities which raise concerns described under Section 744.2 of the Export Administration Regulations."   Section 744.2 of the EAR describes nuclear activities of significant concern to the United States, i.e., nuclear explosive activities and unsafeguarded nuclear fuel cycle activities including facilities for the fabrication of nuclear reactor fuel containing plutonium.

19. Following an unsuccessful administrative appeal of the DoC's notice of its intent to deny the Export License Application, on or about June 9, 2006, PPG Industries was informed that the Export License Application would be denied by the DoC. The license denial was issued by the DoC on June 14, 2006. The following explanation was provided for the denial: "The DoC has concluded that this export would be detrimental to the U.S. Nuclear Non-proliferation policy," and incorporated by reference the reasons provided in the April 10, 2006, intent to deny letter, i.e., the "proposed export poses an unacceptable risk of diversion to activities which raise concerns described under Section 744.2 of the Export Administration Regulations."

20. On or about June 9, 2006, PPG Industries notified Xun Wang and other PPG Paints Trading representatives that the License Application had been denied and that they "must abide by the ruling" of the DoC. PPG Industries further instructed Xun Wang and other PPG Paints Trading representatives that defendant **HUAXING** be advised as soon as possible that the License Application had been denied to allow defendant **HUAXING** time to acquire other products.

21. In response, on or about June 9, 2006, other PPG Paints Trading representatives informed PPG Industries that defendant **HUAXING** had been informed of the license denial and that efforts were being made to help defendant **HUAXING** select a supplier of Level 1 Nuclear Coatings other than PPG Industries.

22. At no time did PPG Industries, PPG Paints Trading, Xun Wang, defendant **HUAXING**, or anyone else, receive or possess a license or authorization from the DoC, located in the District of Columbia, to export and reexport goods, technology or services, of any description, to the PAEC or its nuclear reactors and power plants.

**The Conspiracy**

23. Beginning on or about June 15, 2006, and continuing through in or about March 2007, within the District of Columbia and elsewhere, defendant

**HUAXING**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to commit offenses against the United States, that is,

    a.    to violate the IEEPA and the EAR by causing the Level 1 Nuclear Coatings, which **HUAXING** knew were destined for Chashma II, a PAEC nuclear power plant, to be exported, reexported, and transshipped from the United States to Chashma II in Pakistan, via the PRC, without first obtaining the required licenses or authorizations from the DoC, located in the District of Columbia, in violation of Title 50, United States Code, Section 1705, and Title 15, Code of Federal Regulations, Supplement No. 4 to Part 744, and Sections 744.11 and 764.2; and

    b.    to defraud the DoC and the United States government by interfering with and obstructing a lawful government function, that is, the administration and enforcement of laws and regulations prohibiting the export, reexport or transshipment of goods from the United States to Chashma II, a PAEC nuclear power plant without a license, by deceit, craft, trickery, and dishonest means.

24. The acts and offenses alleged herein began outside of the jurisdiction of any particular State or district, and later occurred within the District of Columbia and elsewhere, and are therefore within the venue of the United States District of Court for the District of Columbia pursuant to Title 18, United States Code, Sections 3237(a) and 3238.

**Objects of the Conspiracy**

25. The objects of the conspiracy were:

    a. to supply the Level 1 Nuclear Coatings for application at Chashma II, a restricted entity in Pakistan;

    b. to conceal from the DoC that the Level 1 Nuclear Coatings were destined for application at Chashma II, a restricted entity in Pakistan; and

    c. to evade the regulations, prohibitions and licensing requirements of IEEPA and the EAR through deceit and dishonest means.

**Manner and Means of the Conspiracy**

26. The manner and means by which the defendant **HUAXING** and its co-conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

    a. To conceal the true end-user of the Level 1 Nuclear Coatings sought to be exported from the United States and to evade United States export controls, defendant **HUAXING** and other co-conspirators caused a third-party distributor located in the PRC to submit requests for the Coatings called for under the Chashma II Contract by facsimile or other forms of communication to PPG Paints Trading located in the PRC.

    b. In turn, Xun Wang and other co-conspirators caused PPG Paints Trading located in the PRC to place purchase orders for the Level 1 Nuclear Coatings by e-mail or other forms of communication with PPG Industries located in the United States.

    c. To conceal the true end-user of the Level 1 Nuclear Coatings sought to be exported from the United States and to evade United States export controls, Xun Wang and other

9

co-conspirators caused the Level 1 Nuclear Coatings exported from the United States to be shipped initially to the PRC before causing them to be reexported to Pakistan for application at Chashma II, a PAEC nuclear power plant.

        d.      To conceal the true end-user of the Level 1 Nuclear Coatings sought to be exported from the United States and to evade United States export controls, Xun Wang and other co-conspirators made, or caused to be made, materially false statements concerning the identity of the end-user of the Level 1 Nuclear Coatings shipments in various documents, such as purchase requests and end-user statements, sent to PPG Industries in the United States.

        e.      To conceal the true end-user of the Level Nuclear 1 Coatings sought to be exported from the United States and to evade United States export controls, Xun Wang and other co-conspirators caused PPG Industries, or its agent, in the United States to fail to submit SEDs, and to submit an SED containing materially false information, to the United States government.

        f.      Xun Wang and other co-conspirators caused PPG Industries to export and reexport the Level 1 Nuclear Coatings from the United States to Pakistan, via the PRC, for application at Chashma II, a PAEC nuclear power plant, without obtaining a license from the DoC, located in the District of Columbia.

        g.      PPG Paints Trading wired money from accounts outside of the United States to accounts of PPG Industries in the United States in payment for the purchased Level 1 Nuclear Coatings.

10

**Overt Acts**

27.     In furtherance of this conspiracy, defendant **HUAXING** and other co-conspirators, both known and unknown, committed, or caused to be committed, overt acts, including but not limited to the following:

(1)     On or about June 15, 2006, outside the United States, defendant **HUAXING** met with Xun Wang and other co-conspirators and agreed upon a scheme whereby PPG Paints Trading could satisfy its obligations under the Chashma II Contract by supplying the Coatings to defendant **HUAXING** through a third-party distributor located in the PRC for application at Chashma II.

(2)     On or about June 15, 2006, outside the United States, Xun Wang and other co-conspirators agreed that Company A would be the third-party distributor that would supply the Coatings under the Chashma II Contract to defendant **HUAXING** for application at Chashma II.

(3)     On or about June 15, 2006, outside the United States, Xun Wang and other co-conspirators agreed that the end-user for the Coatings shipments under the scheme would be falsely identified as the Dalian Shi Zi Kou Nuclear Power Station, a nuclear power plant that was purportedly under construction in the PRC, the export of Coatings to which would not require a DoC license.

(4)     On or about June 16, 2006, defendant Xun Wang sent an e-mail to PPG Industries wherein she described the June 15, 2006 meeting but omitted the material facts that PPG Paints Trading would continue to supply defendant **HUAXING** with Level 1 Nuclear

Coatings under the Chashma II Contract through a third party and would falsely identify the Dalian Shi Zi Kou Nuclear Power Station as being the end-user for the shipments.

(5)     On or about June 20, 2006, defendant **HUAXING** issued a purchase order to Company A who then sent a purchase order to PPG Paints Trading for two shipments of Level 1 Nuclear Coatings intended for application at Chashma II -- namely, approximately 160 gallons of KL65487107A, 40 gallons of KL65487107B, and 40 gallons of KL4093 to be delivered in the first shipment ("the First Shipment of Level 1 Nuclear Coatings"), and approximately 80 gallons of KL65487107A, 20 gallons of KL65487107B, and 20 gallons of KL4093 to be delivered in the second shipment ("the Second Shipment of Level 1 Nuclear Coatings") – Company A's purchase order falsely stated that the two shipments of Level 1 Nuclear Coatings were to be used at the "Dalian Shi Zi Kou Nuclear Power Station."

(6)     On or about June 21, 2006, a member of the conspiracy caused a purchase request to be sent from PPG Paints Trading to PPG Industries requesting that PPG Industries in the United States produce the First Shipment of Level 1 Nuclear Coatings and deliver it to PPG Paints Trading in Shanghai, PRC.

(7)     On or about July 12, 2006, a member of a conspiracy caused an e-mail to be sent to PPG Industries falsely stating that the end-user for the First Shipment of Level 1 Nuclear Coatings was the "Da Lian Shi Zi Kou Nuclear Power Station."

(8)     In or around July 2006, a member of the conspiracy caused PPG Industries to export the First Shipment of Level 1 Nuclear Coatings from the United States to PPG Paints Trading in Shanghai, PRC, for delivery to defendant **HUAXING**, via Company A, without

having obtained the requisite license or authorization from the DoC for its ultimate destination, Chashma II, a PAEC nuclear power plant.

(9) In or around July 2006, as the result of the false statements made by, or caused to be made by, a member of the conspiracy concerning the end-user of the First Shipment of Level 1 Nuclear Coatings, PPG Industries, and its agent, filed no SED for the export.

(10) On or about July 28, 2006, following the arrival of the First Shipment of Level 1 Nuclear Coatings in the PRC, Company A sent an e-mail to PPG Paints Trading requesting additional "export" shipping documentation related to the First Shipment of Level 1 Nuclear Coatings and falsely stating that the "export" documentation was necessary for "inland transportation" of the Level 1 Nuclear Coatings to "our Dalian nuclear power customer[]."

(11) On or about August 2, 2006, Company A deposited 146,240 Chinese Yuan in a PPG Paints Trading account in payment for the First Shipment of Level 1 Nuclear Coatings.

(12) On or about August 7, 2006, a member of the conspiracy caused a purchase request to be sent from PPG Paints Trading to PPG Industries requesting that PPG Industries produce the Second Shipment of Level 1 Nuclear Coatings and deliver it to PPG Paints Trading in Shanghai, PRC.

(13) On or about August 15, 2006, a member of the conspiracy caused an e-mail to be sent to PPG Industries falsely stating that the end-user for the Second Shipment of Level 1 Nuclear Coatings was the "Da Lian Shi Zi Kou Nuclear Power Station."

(14) Between in or around September 2006 and in or around October 2006, a member of the conspiracy caused PPG Industries to export the Second Shipment of Level 1 Nuclear Coatings from the United States to PPG Paints Trading in Shanghai, PRC, for delivery

to defendant **HUAXING**, via Company A, without having obtained the requisite license or authorization from the DoC for its ultimate destination, Chashma II, a PAEC nuclear power plant.

(15)   Between in or around September 2006 and in or around October 2006, as the result of the false statements made by, or caused to be made by, a member of the conspiracy concerning the end-user of the Second Shipment of Level 1 Nuclear Coatings, PPG Industries, and its agent, filed no SED for the export.

(16)   On or about September 19, 2006, Company A sent an e-mail to a member of the conspiracy asking how to deal with "domestic transportation expenses" of "RMB3369.63" and "VAT tax and fees" incurred by defendant **HUAXING** with regard to First Shipment of Level 1 Nuclear Coatings, a sum that included delivery costs in Pakistan.

(17)   On or about September 21, 2006, a member of the conspiracy sent an e-mail approving reimbursement to Company A of the "freight expense" incurred by defendant **HUAXING** for First Shipment of Level 1 Nuclear Coatings and passed through to Company A.

(18)   On or about October 9, 2006, Company A sent an e-mail to a member of the conspiracy requesting reimbursement "on the next order of ours" for "5% value of the invoice (for the 1st delivery to [defendant **HUAXING**]) as the tax related charges" and also a "domestic transportation charge" of "RMB3369.63," a sum that included delivery costs in Pakistan.

(19)   On or about October 9, 2006, a member of the conspiracy sent an e-mail to Company A approving Company A's request for reimbursement "on the next order" for "5%

value of the invoice (for the 1st delivery to [defendant **HUAXING**]) as the tax related charges" and a "domestic transportation charge" of "RMB3369.63."

(20)  On or about October 16, 2006, Company A sent an amended purchase order to PPG Paints Trading "for the delivery to [defendant **HUAXING**]" that reflected a purchase price of 69,020 Chinese Yuan.

(21)  On or about October 19, 2006, Company A deposited 69,020 Chinese Yuan in a PPG Paints Trading account in payment for the Second Shipment of Level 1 Nuclear Coatings.

(22)  On or about October 19, 2006, defendant **HUAXING** issued a purchase order to Company A who then sent a purchase order to PPG Paints Trading for a shipment of Level 1 Nuclear Coatings intended for application at Chashma II – namely, approximately 80 gallons of KL65487107, 20 gallons of KL65487107B, 75 gallons of KLD19140, 50 gallons of KLD1B, and 40 gallons of KL4093 ("the Third Shipment of Level 1 Nuclear Coatings").

(23)  On or about October 23, 2006, a member of the conspiracy caused an email to be sent from PPG Paints Trading to PPG Industries containing a purchase request requesting that PPG Industries in the United States produce the Third Shipment of Level 1 Nuclear Coatings and deliver it to PPG Paints Trading in Shanghai, PRC, and falsely stating that the end user for the Third Shipment of Level 1 Nuclear Coatings was the "Da Lian Shi Zi Kou Nuclear Power Station."

(24)  Between in or around December 2006 and in or around January 2007, a member of the conspiracy caused PPG Industries to export the Third Shipment of Level 1 Nuclear Coatings from the United States to PPG Paints Trading in Shanghai, PRC, for delivery

to defendant **HUAXING**, via Company A, without having obtained the requisite license or authorization from the DoC for its ultimate destination, Chashma II, a PAEC nuclear power plant.

(25)   On or about February 14, 2007, a member of the conspiracy caused to be made false statements as to material facts in an SED filed on behalf of PPG Industries, namely that the ultimate consignee of the Third Shipment of Level 1 Nuclear Coatings was PPG Paints Trading, that the ultimate country of destination of the shipment was "China (Mainland)" and that no license was required for the shipment.

(26)   Defendant **HUAXING** and other co-conspirators failed to receive and possess, and caused others to fail to receive and possess, a license or authorization from the DoC, located in the District of Columbia, to export any of the Coatings set forth above from the United States for application at Chashma II, a restricted entity in Pakistan.

(**Conspiracy to Violate the International Emergency Economic Powers Act and the Export Administration Regulations and to Defraud the United States and the U.S. Department of Commerce,** in violation of Title 18, United States Code, Section 371; **Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2)

## COUNT TWO

28.   Paragraphs 1 through 22 of Count One of this Information are re-alleged as if fully set forth herein.

29.   On or about June 21, 2006, through on or about December 18, 2006, in the District of Columbia and elsewhere, defendant

### HUAXING

did knowingly and willfully export and reexport, attempt to export and reexport, and cause to be exported and reexported certain goods, to wit, approximately 240 gallons of Coatings, from the

United States to Chashma II, a PAEC nuclear power plant in Pakistan, via the PRC, without having first obtained the required license or authorization from the DoC, located within the District of Columbia.

(**Unlawful Export or Attempted Export**, in violation of Title 50, United States Code, Sections 1705(a) and (c); Executive Order 13222; Title 15, Code of Federal Regulations, Supplement No. 4 to Part 744, and Sections 744.11 and 764.2; **Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

### COUNT THREE

30. Paragraphs 1 through 22 of Count One of this Information are re-alleged as if fully set forth herein.

31. On or about August 7, 2006, through on or about December 18, 2006, in the District of Columbia and elsewhere, defendant

### HUAXING

did knowingly and willfully export and reexport, attempt to export and reexport, and cause to be exported and reexported certain goods, to wit, approximately 120 gallons of Coatings, from the United States to Chashma II, a PAEC nuclear power plant in Pakistan, via the PRC, without having first obtained the required license or authorization from the DoC, located within the District of Columbia.

(**Unlawful Export or Attempted Export**, in violation of Title 50, United States Code, Sections 1705(a) and (c); Executive Order 13222; Title 15, Code of Federal Regulations, Supplement No. 4 to Part 744, and Sections 744.11 and 764.2; **Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

### COUNT FOUR

32. Paragraphs 1 through 22 of Count One of this Information are re-alleged as if fully set forth herein.

33.     On or about October 23, 2006, through in or around March 2007, in the District of Columbia and elsewhere, defendant

**HUAXING**

did knowingly and willfully export and reexport, attempt to export and reexport, and cause to be exported and reexported certain goods, to wit, approximately 265 gallons of Coatings, from the United States to Chashma II, a PAEC nuclear power plant in Pakistan, via the PRC, without having first obtained the required license or authorization from the DoC, located within the District of Columbia.

(**Unlawful Export or Attempted Export**, in violation of Title 50, United States Code, Sections 1705(a) and (c); Executive Order 13222; Title 15, Code of Federal Regulations, Supplement No. 4 to Part 744, and Sections 744.11 and 764.2; **Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

Respectfully submitted,

_____
RONALD C. MACHEN JR.
UNITED STATES ATTORNEY


_____
G. MICHAEL HARVEY (D.C. Bar No. 447465)
Assistant United States Attorney
National Security Section
555 Fourth Street, NW (11th Floor)
Washington, D.C. 20530
(202) 252-7810
Michael.Harvey2@usdoj.gov


November \_\_\_\_\_, 2012